UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
REGINALD MIMMS,

                Plaintiff,

      -against-

A.W. CARR, CAPTAIN HESS, CAPTAIN PENNICK,
K. PAGE, K. SMALL, J. ANDERSON, C. MARSHALL,
D. GONZALEZ, RAMCHARAN, MS. HAMILTON, and
DR. ITTAYEM,

                Defendants.

------------------------------------------------------------X

**MEMORANDUM & ORDER**

**09-CV-5740 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff pro se Reginald Mimms ("Mimms") brings this action under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) against various government employees working at the Metropolitan Detention Center ("MDC"), a prison run by the United States Bureau of Prisons ("BOP"). (<u>See</u> Am. Compl. (Docket Entry # 7).) Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6).[1] (Docket Entry # 48.) For the following reasons, Defendants' motion is granted in part and denied in part.

## I.    BACKGROUND

      Mimms alleges a series of events that occurred at the MDC between October 2009 and January 2010. (<u>See</u> Am. Compl.) Accompanying the Amended Complaint is an "Appendix" that includes several administrative grievance forms that Mimms filed, some of which correspond to the incidents alleged in the Amended Complaint, but many of which do not. (<u>See</u>

---

[1] Defendants move in the alternative for summary judgment under Rule 56. As discussed below, all of Mimms's claims are dismissed, except for his claim against Defendants Anderson and Marshall for retaliating against him in violation of the First Amendment. Both parties should be afforded an opportunity to conduct appropriate discovery as to this claim before making any factual submissions on a motion for summary judgment. Therefore, the court, in its discretion, declines to rule at this stage on Defendants' alternative Rule 56 motion.

Docket Entry ## 7-1, 7-2.) Also included in the Appendix are several requests by Mimms for medical treatment. (See Docket Entry # 7-3.) Mimms's specific allegations against the named Defendants are as follows:[2]

(1) On October 4, 2009, Defendant Associate Warden Carr ("Carr") threatened to place Mimms in the "Special Housing Unit ['SHU'] and [to] give[] [him] an incident report for asking questions regarding the cadre program," a prison program he was assigned to. (Am. Compl. at 4, 13.) In addition, Carr warned Mimms, "Do what we say or we'll lock you up." (Id. at 13.)

(2) On January 6, 2010, Defendant C. Marshall ("Marshall") made an inappropriate, sexually suggestive comment to Mimms, saying, "When you gonna let me suck that[?]," while looking at Mimms's crotch. (Id. at 5.)

(3) Mimms alleges a series of instances from October 2009 to January 2010 in which MDC employees—namely, Defendants J. Anderson ("Anderson"), K. Page ("Page"), K. Small ("Small"), Captain Hess ("Hess"), and Captain Pennick ("Pennick")—mishandled his administrative grievances by failing to accept them, failing to respond to them, or failing to forward them to appropriate parties. (Id. at 5, 12, 13.)

(4) On January 8, 2010, Defendant Dr. Ittayem ("Ittayem") refused to treat Mimms after he complained of nerve damage in his arm (id. at 5, 8) and, on January 14, 2010, Defendant Ms. Hamilton ("Hamilton") failed to respond to Mimms's request for dental treatment (id. at 6, 8).

(5) Mimms alleges that, on January 12 and 13, 2010, Anderson, Marshall, and other members of MDC staff retaliated against him for repeatedly filing administrative grievances. Anderson was part of the "unit team" assigned to Mimms, which apparently had some

---

[2] Mimms also makes allegations regarding MDC employees who are not named Defendants, namely verbal abuse and threats by a Ms. Matos, a Mr. Ennis, and a Mr. Birkland. (See Am. Compl. at 13; Docket Entry # 7-1 at 1.) Because it does not appear that Mimms intends to sue these individuals, and because nothing in the docket indicates that they have been served or named as defendants, the court will not address these allegations.

responsibility for handling his administrative grievances. (Id. at 13.) On three prior occasions—in October and December 2009—Mimms had handed Anderson grievances on other staff members. (Id. at 5, 13.) On these occasions, Anderson had said to Mimms, "You sure you want to file this[?]," "I'm tired of you and these . . . administrative remedies," and "I'm so sick of you and these" administrative grievances. (Id. at 5, 13.)

On January 12, 2010, Mimms attempted to give Anderson a grievance "on the legal department," which Anderson refused to accept. (Id. at 6.) "Ten minutes" later, Anderson "coerced" Marshall into "shak[ing] down" Mimms's cell and confiscating his belongings. (Id.) The same day, Marshall "ranted angrily" at Mimms, saying "let what I've taken from you be a lesson" and "the next time you write me up, spell my name right—Marshall has two L's." (Id.) The next day, January 13, 2010, Marshall sprayed ketchup all over Mimms's cell and told Mimms's cellmate, "Tell Mimms to clean that shit up or I'll give him an incident report." (Id.) That same day, Mimms received four "incident reports." (Id.) After Mimms explained to Defendant D. Gonzalez ("Gonzalez") that Gonzalez was "violating policy and my rights regarding incident reports and policy," Gonzalez said, "I have to lock you up." (Id.) Mimms was then placed in the SHU; he does not state for how long. (Id.)

Mimms alleges that he was the victim of "retaliation for filing on staff." (Id.) He further alleges that Anderson and Marshall are liable for "conspiring to falsely arrest and imprison [him] for exercising his constitutional rights by filing administrative remedies against staff for misconduct." (Id. at 7.)

In addition to alleging that Anderson, Marshall, and Gonzalez were involved in imposing discipline on him in retaliation for his filing of grievances, Mimms alleges that Page and Defendant Ramcharan ("Ramcharan"), along with Anderson and Marshall, "caused [his]

3

wrongful charging, prosecution, false report, and . . . wrongful conviction of prison infractions by coercing, constructing, altering, manipulating, and fabricating evidence which formed the basis for plaintiff [sic] charges." (Id.) Mimms does not provide any detail as to how or when such fabrication occurred.

(6) Mimms alleges that Carr, Hess, Pennick, Page, and Small failed to properly supervise or train Anderson and Marshall. (Id. at 4, 8, 12.)

Nothing in Mimms's Amended Complaint or Appendix indicates that he fully exhausted any of his administrative grievances, as required, and Defendants move to dismiss on this ground (see Def. Mem. (Docket Entry # 52) at 5-7). In response, Mimms claims that he somehow exhausted his administrative remedies by filing separate civil suits in connection with unrelated, prior events at different correctional facilities. (See Mimms Resp. (Docket Entry # 46) at 2.) Mimms does not state that he exhausted his claims in any other fashion. He also argues that, in any event, the BOP's administrative grievance procedure violates the First Amendment, such that exhaustion should be excused. (Id.) Mimms's own submissions establish that he did not exhaust his administrative remedies as per BOP procedure.

## II.    DISCUSSION

### A.    Applicable Legal Standards

#### 1.    Motion to Dismiss Standard

In reviewing a defendant's motion to dismiss under Rule 12(b)(6), the court accepts as true all allegations of fact made by the plaintiff and draws all reasonable inferences from these allegations in the plaintiff's favor. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89,

94 (2007) (internal quotation marks omitted). But while "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks omitted), even a pro se complaint will be dismissed if it does not contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

Bivens provides a remedy only for constitutional violations. See Benzman v. Whitman, 523 F.3d 119, 125 (2d Cir. 2008) ("A Bivens action is a blunt and powerful instrument for correcting constitutional violations[.]"); Kingsley v. Bureau of Prisons, 937 F.2d 26, 31 (2d Cir. 1991) ("In a Bivens action, 'damages may be obtained for injuries consequent upon a violation of [the Constitution] by federal officials.'") (quoting Bivens, 403 U.S. at 395). Thus, to the extent Mimms's claims fail to state a constitutional violation, they will be dismissed.

### 2. Exhaustion

Under the Prison Litigation Reform Act of 1996 ("PLRA"), an action may not be brought "with respect to prison conditions under [42 U.S.C. §] 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a); see Porter v. Nussle, 534 U.S. 516, 524 (2002) (noting that PLRA exhaustion requirement applies to Bivens claims). "Once within the discretion of the district court, exhaustion in cases covered by [the PLRA] is now mandatory." Id. The PLRA "requires proper exhaustion," Woodford v. Ngo, 548 U.S. 81, 93

(2006), which means the prisoner must "compl[y] with the agency's deadlines and other critical procedural rules," id. at 90; see also Davis v. Reilly, 324 F. Supp. 2d 361, 365 (E.D.N.Y. 2004) (finding that, to satisfy the exhaustion requirement, a prisoner "must pursue his challenge . . . through to the highest level of administrative review prior to his suit").

The BOP has established a four-step administrative-remedies process that federal inmates must follow to meet the PLRA's exhaustion requirement. First, the inmate must attempt to informally resolve any issue of concern with prison staff. 28 C.F.R. § 542.13(a). If the inmate is dissatisfied with the informal resolution, he must submit a formal Administrative Remedy Request (BP-9) within twenty days of the incident in question. Id. § 542.14(a). Within twenty days of such filing, the prison warden is required to respond in writing. Id. § 542.18. An inmate who is not satisfied with the warden's response to his BP-9 may submit an appeal on a BP-10 form to the Regional Director within twenty days of the date of the warden's response. Id. § 542.15(a). The Regional Director is required to respond in writing within thirty days of such filing. Id. § 542.18. An inmate who is not satisfied with the Regional Director's response may submit a final appeal on a BP-11 form to the BOP's General Counsel within thirty days of the Regional Director's response. Id. § 542.15(a). General Counsel is required to respond in writing within forty days of such filing. Id. § 542.18.

If, at any stage, the inmate does not receive a response within the time allotted, he should consider his request or appeal to have been denied. Id. In other words, if the deadline for response to either a BP-9 or a BP-10 has expired, the inmate, in order to preserve his claim, must file an appeal at the next level, rather than file suit in the district court. See George v. Morrison-Warden, No. 06-CV-3188 (SAS), 2007 WL 1686321, at *3 (S.D.N.Y. June 11, 2007) ("It is well-settled . . . that *even when an inmate files a grievance and receives no response*, he must

6

nevertheless properly exhaust all appeals before his grievance is considered exhausted.")
(emphasis in original and internal quotation marks omitted).

Although exhaustion under the PLRA is mandatory, the court must employ a three-part inquiry where defendants, as here, assert lack of exhaustion as a defense. See Macias v. Zenk, 495 F.3d 37, 41 (2d Cir. 2007). First, the court must ask whether administrative remedies were in fact "available" to the prisoner. Id. Second, the court must inquire as to "whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Id. Finally, if administrative remedies were available to the inmate and the defendants are not estopped, the court should consider whether "special circumstances," such as a reasonable misunderstanding of grievance procedures, have been plausibly alleged to justify the prisoner's failure to exhaust. Id.

Though a plaintiff need not plead exhaustion, see Jones v. Bock, 549 U.S. 199, 216 (2007), his complaint may be dismissed on the ground of exhaustion if "the allegations in the complaint suffice to establish that ground," id. at 215.

### B.    Individual Claims

#### 1.    First Amendment Retaliation

Mimms alleges that, on January 12 and 13, 2010, Anderson, Marshall, and other members of the MDC staff retaliated against him for filing administrative grievances. Mimms alleges that, on several prior occasions, he had attempted to hand Anderson—who was part of the "unit team" assigned to Mimms—administrative grievances on other staff members. (Am. Compl. at 5, 13.) Upon receiving these grievances, Anderson expressed displeasure and said she was "sick of" Mimms's repeated filings. (Id. at 5, 13.) On January 12, 2010, after Mimms attempted to hand Anderson another grievance—this one on the "legal department"—Anderson

7

directed Marshall to search Mimms's cell. (Id. at 6.) Marshall did so, confiscating several of Mimms's belongings. (Id.) Some time later, Marshall yelled that this should "be a lesson" to Mimms, adding, "the next time you write me up, spell my name right." (Id.) The next day, Marshall sprayed ketchup all over Mimms's cell and warned that he would receive an "incident report" if he failed to clean it up. (Id.) The same day, Mimms received four "incident reports" and was placed in the SHU. (Id.) Mimms alleges that Anderson and Marshall "conspir[ed] to falsely arrest and imprison" him, and that all this was done in retaliation for his filing of complaints against prison staff. (Id. at 6, 7.)

Mimms's allegations in connection with the events of January 12 and 13, 2010, are not limited to Anderson and Marshall. Mimms alleges that, along with Anderson and Marshall, Page, Ramcharan, and Gonzalez "caused [his] wrongful charging, prosecution, false report, and . . . wrongful conviction of prison infractions by coercing, constructing, altering, manipulating, and fabricating evidence which formed the basis for plaintiff [sic] charges." (Id. at 7.) Mimms also alleges that, on January 13, 2010, after he received the four incident reports, he complained to Gonzalez that the incident reports violated his rights. (Id.) Gonzalez responded that, nevertheless, he had to "lock [Mimms] up." (Id.)

a.      Exhaustion

Mimms's allegations are sufficient to support the conclusion, at this stage, that, after January 13, 2010, the BOP's administrative grievance procedures were no longer "available" to him. See Macias v. Zenk, 495 F.3d 37, 41 (2d Cir. 2007) (exhaustion is excused if administrative remedies were not "available" to the inmate). Whether conduct by prison staff renders grievance procedures unavailable to an inmate depends on whether "a similarly situated individual of ordinary firmness" would have deemed them available. Hemphill v. New York,

380 F.3d 680, 688 (2d Cir. 2004) (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).

Mimms's allegations are sufficient to show that Marshall's conduct and Mimms's subsequent discipline, apparently in retaliation for Mimms's previous filing of grievances against prison staff, would have deterred a similarly situated inmate of ordinary firmness from pursuing further grievances or appeals. See Hill v. Donoghue, No. 08-CV-1045 (JS) (AKT), 2010 WL 3924858, at *1 (E.D.N.Y. Sept. 30, 2010) ("[C]ourts have held that administrative remedies may not be available when prison officials engage in affirmative misconduct, such as threats or intimidation, to deter or impede a prisoner from filing a grievance."); Hepworth v. Suffolk County, No. 02-CV-6473 (ENV) (ETB), 2006 WL 2844408, at *4-7 (E.D.N.Y. Sept. 29, 2006) (exhaustion excused where inmate was threatened for filing a grievance); McCullough v. Burroughs, No. 04-CV-3216 (FB) (LB), 2005 WL 3164248, at *4 (E.D.N.Y. Nov. 29, 2005) (exhaustion excused where inmate was assaulted in retaliation for filing grievances); see also Macias, 495 F.3d at 45 (remanding for consideration of whether threats by prison staff rendered administrative remedies unavailable); Hemphill, 380 F.3d at 688 (same). Therefore, the court declines to dismiss, on exhaustion grounds, Mimms's claims relating to the events of January 12-13, 2010.

### b. Claims Against Anderson and Marshall

#### i. Sufficiency of Allegations

Recognizing "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated," the Second Circuit has warned that retaliation claims should be treated "with skepticism and particular care." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). "However, that does not mean that such claims are automatically to be dismissed." See Jones v. Harris, 665 F. Supp. 2d 384, 397 (S.D.N.Y. 2009). To prove a First Amendment retaliation claim, the plaintiff must

demonstrate (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) a causal connection between the protected speech and the adverse action. See Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009).

The first requirement—that the conduct in question be protected—is met, as it is well-settled that filing prison grievances is activity protected by the First Amendment. See, e.g., Gill v. Pidlypchak, 389 F.3d 379, 384 (2d Cir. 2004); Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003).

The second requirement—that the prison officials' actions be "adverse" to the prisoner—is met as well. In the prison context, whether a retaliatory action is "adverse" depends on whether it would deter a similarly situated prisoner of ordinary firmness from exercising his constitutional rights. See Espinal, 558 F.3d at 129 n.7. The prisoner "need *not* demonstrate an actual or subjective chill—that is, any dissuasion from further exercising *his own* rights." Gill v. Calescibetta, 157 F. App'x 395, 398 (2d Cir. 2005) (emphasis in original) (citing Pidlypchak, 389 F.3d at 380). The Second Circuit has held that the retaliatory filing of false misbehavior reports against a prisoner and his placement in "keeplock" constitutes adverse action. See Pidlypchak, 389 F.3d at 384; see also Mateo v. Fischer, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) (filing of false misbehavior report constitutes adverse action). Mimms alleges that Marshall, on Anderson's order, searched Mimms's cell and confiscated his belongings; that Marshall subsequently sprayed ketchup all over Mimms's cell and threatened to file an incident report if Mimms didn't clean it up; that Anderson and Marshall "construct[ed], alter[ed], manipulate[ed], and fabricat[ed] evidence which formed the basis" for disciplinary charges against Mimms; that Mimms was given four disciplinary incident reports; and that Mimms was subsequently put in the SHU. These allegations clearly meet the "adverse action" requirement.

Mimms has also met the third requirement, that of causation. "In order to satisfy the causation requirement, allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action." Davis, 320 F.3d at 354. Mimms alleges that, on several prior occasions, Anderson expressed displeasure at Mimms's repeated filing of grievances. (Am. Compl. 5, 13.) He also alleges that Marshall stated that the confiscation of Mimms's belongings should be a "lesson," and added, "the next time you write me up, spell my name right—Marshall has two L's." (Id. at 6.) These alleged comments by Anderson and Marshall tie their alleged retaliatory conduct to Mimms's filing of prison grievances. Furthermore, "[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal, 558 F.3d at 129; see also Mateo, 682 F. Supp. 2d at 435 ("Circumstantial evidence of causation may exist where the adverse action occurs soon after the protected activity"; where prisoner alleged that false misbehavior report was filed one day after he filed a grievance, causation requirement was met) (citing Colon, 58 F.3d at 872). Mimms alleges that the retaliatory action took place on the same day and the day after he attempted, on January 12, 2010, to file a prison grievance against the "legal department" by handing it to Anderson. (Am. Compl. at 6.) Furthermore, Mimms includes, in his Appendix, a grievance filed against Anderson and Marshall, also dated January 12, 2010. (See Docket Entry # 7-2 at 8.)

In sum Mimms has alleged sufficient, plausible facts to show that Anderson and Marshall subjected him to adverse action in retaliation for his exercise of protected activity, namely the filing of administrative grievances against prison staff. Mimms has therefore stated a First Amendment retaliation claim as to Anderson and Marshall.

ii.     Qualified Immunity

Notwithstanding Defendants' argument to the contrary (see Def. Mem. at 28), Anderson and Marshall are not entitled to qualified immunity. "Qualified immunity shields government officials from civil suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Costello v. City of Burlington, 632 F.3d 41, 51 (2d Cir. 2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Accordingly, a government official "is shielded from liability for civil damages if his conduct did not violate clearly established rights or if it would have been objectively reasonable for the official to believe his conduct did not violate plaintiff's rights." Reuland v. Hynes, 460 F.3d 409, 419 (2d Cir. 2006). In determining whether the constitutional right in question was "clearly established," a court may refer to the decisional law of the applicable circuit. Costello, 632 F.3d at 52.

As the case law cited above demonstrates, it was clearly established, at the time of the incidents in question, that the filing of prison grievances was protected by the First Amendment. See Gill v. Pidlypchak, 389 F.3d 379, 384 (2d Cir. 2004); Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003). It was also clearly established that subjecting a prisoner to fabricated disciplinary reports and consequent confinement in the SHU, in retaliation for the filing of such grievances, constituted unconstitutional "adverse action." See Espinal v. Goord, 558 F.3d 119, 129 n.7 (2d Cir. 2009); Pidlypchak, 389 F.3d at 380. Moreover, where, as here, the allegations in the complaint are sufficient to support the claim that a defendant violated clearly established constitutional rights with a retaliatory motive, the defendant cannot assert that his conduct was "objectively reasonable." See Johnson v. Ganim, 342 F.3d 105, 117 (2d Cir. 2003).

Accordingly, the court denies Defendants' motion to dismiss as to Mimms's claim that Anderson and Marshall retaliated against him in violation of the First Amendment.[3]

        c.    Claims Against Ramcharan, Page, and Gonzalez

           i.    First Amendment

To state a First Amendment retaliation claim against Ramcharan, Page, or Gonzalez, Mimms, under Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), must allege facts sufficient to render it facially "plausible" that those Defendants took "adverse action" against Mimms that was causally connected to his filing of prison grievances. Whereas Mimms presents a relatively detailed, plausible narrative as to Anderson and Marshall, he offers no such detail to add plausibility to his allegations against Page, Ramcharan, and Gonzalez.

Ramcharan is mentioned only once in the Amended Complaint, as part of the group of five people (including Ramcharan, Anderson, Page, Marshall, and Gonzalez) who allegedly fabricated evidence. (Am. Compl. at 7.) Mimms does not differentiate among the conduct of these five and does not specify what evidence was allegedly fabricated, or how.

Page is mentioned elsewhere in the Amended Complaint, where Mimms alleges that he, along with Anderson and Small, failed to properly handle Mimms's administrative grievances. (Id. at 5, 13.) Mimms also alleges that Page, along with Carr, Hess, Pennick, and Small, failed to properly train Anderson and Marshall. (Id. at 8.) Nonetheless, these additional allegations do

---

[3] Contrary to Defendants' argument (see Def. Mem. at 19), Mimms's First Amendment retaliation claim is not barred by Edwards v. Balisok, 520 U.S. 641 (1997). In that case, the Supreme Court, extending its ruling in Heck v. Humphrey, 512 U.S. 477 (1994), held that the district courts must dismiss any civil claim necessarily implying the invalidity of a prison disciplinary proceeding *affecting the length of sentence* (e.g., affecting "good time" credit), unless the disciplinary action has previously been reversed. See Balisok, 520 U.S. at 648. In Peralta v. Vasquez, 467 F.3d 98 (2d Cir. 2006), the Second Circuit made clear that the Balisok rule has no application where the prison disciplinary proceeding in question does *not* affect the length of the inmate's sentence. Id. at 103-04; see also McEachin v. Selsky, 225 F. App'x 36, 37 (2d Cir. 2007). Nothing in the parties' submissions indicates that the discipline to which Mimms was subject on January 13, 2010 affected the length of his sentence. Therefore, Balisok does not apply.

not add detail or plausibility to Mimms's claim that Page participated in fabricating the evidence that led to Mimms's January 13, 2010 placement in the SHU.

Mimms alleges that Gonzalez was one of the five who fabricated evidence and also alleges that, on January 13, 2010, Gonzalez said to Mimms, "I have to lock you up." (Id. at 6, 7.) These are the only mentions of Gonzalez in the Amended Complaint. Mimms's allegations against Gonzalez are not meaningfully different from those against Ramcharan. Gonzalez's alleged statement that he had to "lock [Mimms] up" does not suggest that he participated in the alleged fabrication of evidence or that he acted with retaliatory motive.

Mimms's bare allegation that Ramcharan, Page, and Gonzalez, at some unidentified time, fabricated unidentified evidence against Mimms is insufficient to meet the Iqbal plausibility standard. See Iqbal, 129 S. Ct. at 1949 (allegations are insufficient to state a claim if they consist of "'naked assertion[s]' devoid of 'further factual enhancement'") (quoting Twombly, 550 U.S. at 557); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that Iqbal plausibility standard was not met as to one of plaintiff's claims where plaintiff, in connection with this claim, alleged that "'Defendants[,]' undifferentiated," violated his rights, and "fail[ed] to specify any culpable action taken by any single defendant"). The court therefore dismisses Mimms's First Amendment retaliation claims against Ramcharan, Page, and Gonzalez.

### ii. Due Process

To the extent that Mimms's allegations against Ramcharan, Page, and Gonzalez can be read to claim a violation of Mimms's due process rights, such a claim must also fail. "[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004) (internal quotation marks omitted). "A prisoner's

14

liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (internal quotation marks and alterations omitted). An inmate who alleges that prison officials violated his due process rights by imposing discipline must show that the conditions of his disciplinary segregation were more onerous than "routine prison conditions" or that the duration of the segregation was longer than permissible "discretionary confinement." Id. The Second Circuit noted in Colon v. Howard, 215 F.3d 227 (2d Cir. 2000), that restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and that, therefore, an inmate subjected to such confinement would have to prove that the conditions were more onerous than usual. Id. at 231-32 & 232 n.5. Nothing in Mimms's Amended Complaint indicates that he was subjected to confinement that was unusually onerous or extended. Thus, Mimms has failed to state a claim that the January 13, 2010 disciplinary proceeding implicated any due-process-protected liberty interest. Mimms also fails to state a claim that Ramcharan, Page, and Gonzalez deprived him of due process, because, as explained above, his allegation that those Defendants participated in fabricating evidence against him lacks plausibility under Iqbal.

### 2. Threat to Place Mimms in the SHU

Mimms alleges that, on October 4, 2009, Carr threatened to place him in the SHU "for asking questions" about a prison program, after which Mimms was given an "incident report" in connection with the incident. (Am. Compl. at 4, 13.) Any claims related to these allegations are unexhausted. Mimms alleges that he submitted an administrative grievance in connection with Carr's threat, and never received any response. (Id. at 13.) As the applicable BOP rules make clear, Mimms was required to file a BP-9 Administrative Remedy Request within twenty days of

the incident, i.e., by October 24, 2009. If he received no response to the BP-9 within twenty additional days—i.e., by November 13, 2009—he was required to assume that the relief requested in the BP-9 had been denied and to submit a BP-10 appeal. Neither in his Amended Complaint nor in his response to Defendants' motion does Mimms claim to have filed either a BP-9 or a BP-10. Instead, he argues that he exhausted his administrative remedies by filing unrelated lawsuits and that the BOP's grievance procedures are unconstitutional. (See Mimms Resp. at 2.) The court considers it established by the pleadings that Mimms failed to exhaust his administrative remedies in connection with the October 4, 2009 incident, and therefore any related claims must be dismissed. See Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009) (affirming dismissal of claim where inmate's failure to properly exhaust was "undisputed").

### 3. Inappropriate Sexual Comment

Mimms alleges that, on January 6, 2010, Marshall made an inappropriate sexual comment to him. (Am. Compl. at 5.) Exhaustion is excused as to this claim for the same reason discussed above as to Mimms's First Amendment retaliation claim. After the alleged retaliation of January 12 and 13, 2010—that is, before the passing of the twenty-day deadline for filing a grievance in connection with the January 6, 2010 incident—an inmate of "ordinary firmness" would have felt that administrative grievance procedures were no longer "available."

Nonetheless, Mimms fails to state a claim in connection with this incident. Allegations of verbal harassment, unaccompanied by resulting injury, do not state a claim under the United States Constitution. See Cole v. Fischer, 379 F. App'x 40, 43 (2d Cir. 2010); Felder v. Filion, 368 F. App'x 253, 256 (2d Cir. 2010) (both citing Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986)). An inmate's allegations of "severe or repetitive" sexual abuse may state a claim under the Eighth Amendment. See Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997). The

comment alleged by Mimms does not rise to this level, however. <u>See</u> <u>id.</u> (finding that plaintiff's allegations of "small number of incidents in which he allegedly was verbally harassed, touched, and pressed against without his consent" were insufficiently serious to state a claim under the Eighth Amendment); <u>see also</u> <u>Jones v. Harris</u>, 665 F. Supp. 2d 384, 396 (S.D.N.Y. 2009) ("Several district courts have considered the issue, and have held that verbal sexual harassment of a prisoner, without physical contact, does not violate the Eighth Amendment.") (citing cases). "This is true even though sexual harassment in any form, and no matter how minor the incident, is always despicable." <u>Id.</u> at 396.

Because Mimms's allegations as to Marshall's conduct on January 6, 2010 do not make out a constitutional violation, any claims relating to this conduct are dismissed.

### 4.  Improper Handling of Administrative Grievances

Mimms alleges that, between October 2009 and January 2010, Anderson, Page, Small, Hess, and Pennick mishandled his administrative grievances by failing to accept them, failing to respond to them, or failing to forward them to appropriate parties. (Am. Compl. at 5, 12, 13.) Based on Mimms's filings, it appears that Mimms did not exhaust his administrative remedies as to these incidents. Further, in at least some instances, this failure to exhaust cannot be excused by the alleged January 12-13, 2010 retaliation against Mimms, because there were steps Mimms was required to take to exhaust prior to January 12, 2010. However, the court need not determine which of these claims must be dismissed for lack of exhaustion, since it is clear that these allegations fail to state a constitutional claim, either under the Due Process Clause or the First Amendment.

To make out a due process claim, a plaintiff must prove that he had a liberty interest upon which defendant's conduct infringed. <u>See</u> <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005). It is

well-established that prison grievance procedures do not create a due-process-protected liberty interest. See, e.g., Mateo v. Fischer, 682 F. Supp. 2d 423, 431 n.3 (S.D.N.Y. 2010); Mastroianni v. Reilly, 602 F. Supp. 2d 425, 437 (E.D.N.Y. 2009); Torres v. Mazzuca, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003). Thus, the alleged failure of prison staff to properly respond to or accept Mimms's grievances did not, in itself, violate Mimms's right to due process.

Nor did it violate Mimms's First Amendment rights. The First Amendment guarantees meaningful access to the courts and the right to petition the government for redress. See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). The First Amendment is not implicated, however, where prison officials deny an inmate access to grievance procedures. As discussed above, where an inmate files a grievance but is dissatisfied with the response, or lack of response, he may appeal to the Regional Director and then to the BOP's General Counsel. If the inmate is unable to obtain relief in this manner, he may bring suit in federal court. In particular, if the conduct of prison staff renders these procedures unavailable to the inmate, failure to exhaust will be excused and the inmate may bring suit in federal court. See Macias v. Zenk, 495 F.3d 37, 41 (2d Cir. 2007). Thus, the First Amendment rights to petition the government and access the courts are not infringed where prison officials deny inmates access to grievance procedures. See, e.g., Harris v. Westchester County Dep't of Corrections, No. 06-CV-2011 (RJS), 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)); Shell v. Brzezniak, 365 F. Supp. 2d 362, 370-71 (W.D.N.Y. 2005); Lumaj v. Williams, No. 03-CV-1849 (PKC), 2004 WL 1207894, at *5 (S.D.N.Y. June 2, 2004); Cancel v. Goord, No. 00-CV-2042 (LMM), 2001 WL 303713, at *3-4 (S.D.N.Y. Mar. 29, 2001).

Accordingly, the court dismisses Mimms's claims based on the failure by MDC staff to properly respond to his prison grievances.[4]

### 5. Deliberate Indifference to Mimms's Medical Needs

#### a. Claim Against Hamilton

Mimms alleges that, on January 14, 2010, Hamilton failed to respond to Mimms's request for dental treatment. (Am. Compl. at 6, 8.) This claim is dismissed for lack of jurisdiction.

In a sworn declaration accompanying the Defendants' motion, Nicole McFarland ("McFarland"), a staff attorney employed by the MDC, states that Hamilton worked at the MDC as a "dentist commissioned by the Public Health Service ('PHS')." (McFarland Decl. (Docket Entry # 50) ¶ 22.) Mimms does not dispute this (see Mimms Resp.) and the court finds that Hamilton was, as McFarland states, commissioned by the PHS.

Under 42 U.S.C. § 233(a), the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), is the "exclusive remedy" for actions "resulting from the performance of medical, surgical, dental, or related functions, . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment." See Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000). Section 233(a) specifically extends this immunity to civil actions based on an "omission." Furthermore, § 233(a) extends to alleged constitutional violations, shielding PHS employees from Bivens actions arising out of their employment duties. See generally Hui v. Castaneda, 130 S. Ct. 1845 (2010); see also Cuoco, 222 F.3d at 107-08.

It is clear that Hamilton's alleged failure to respond to Mimms's request for dental treatment was an omission "within the scope" of her employment as a dentist commissioned by

---

[4] For the same reasons—the lack of a protected liberty interest and the inmate's unimpeded access to federal court—the court finds meritless Mimms's argument that the BOP's grievance procedures are themselves unconstitutional (see Mimms Resp. at 2).

the PHS. See, e.g., Warrender v. United States, No. 09-CV-2697 (KAM) (LB), 2011 WL 703927, at *4 (E.D.N.Y. Feb. 17, 2011) (defendant PHS employee's delay in providing medication to plaintiff was within the scope of defendant's employment); Brown v. McElroy, 160 F. Supp. 2d 699, 703 (S.D.N.Y. 2001) (alleged failure by defendant PHS employees to provide plaintiff with medical treatment, "if true, occurred within their capacity as doctors responsible for rendering medical treatment to Brown").

Since, under § 233(a), the FTCA provides the "exclusive remedy" for claims such as this one, the court lacks subject matter jurisdiction over Mimms's Bivens claim against Hamilton. See Adekoya v. Holder, 751 F. Supp. 2d 688, 693-94 (S.D.N.Y. 2010) (plaintiff's claims against PHS employees dismissed for lack of subject matter jurisdiction under § 233(a)); Libbett v. Doody, 686 F. Supp. 2d 271, 275 n.5 (W.D.N.Y. 2010) ("[T]he issue of § 233(a)'s applicability to plaintiff's claims goes to the Court's subject matter jurisdiction over those claims[.]"). Accordingly, the court dismisses this claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The court, in dismissing on jurisdictional grounds, is permitted to rely on McFarland's affidavit without, in so doing, converting Defendants' motion to dismiss into one for summary judgment. See Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 & 88 n.8 (2d Cir. 2006); J.S. ex rel. N.S. v. Attica Central Schools, 386 F.3d 107, 110 (2d Cir. 2004).[5]

---

[5] Under 28 U.S.C. § 2679(d)(1), the court must deem Mimms's claim against Hamilton to be a claim under the FTCA, such that "the United States shall be substituted as the party defendant." The court, however, must dismiss such a claim for lack of subject matter jurisdiction, since Mimms failed to exhaust his administrative remedies under the FTCA. See Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived."). In order to exhaust an FTCA claim, a federal inmate must first file his claim with the BOP's regional office. See 28 C.F.R. § 543.31(c). If the inmate is dissatisfied with the regional office's response, he may submit a written request for reconsideration. See id. § 543.32(g). Only if the inmate is "dissatisfied with the final agency action" may he file an FTCA suit in federal court. See id.; Ali v.

b.    Claim Against Ittayem

Mimms alleges that, on January 8, 2010, Ittayem refused to treat the nerve damage in Mimms's left arm. (Am. Compl. at 5, 8.)

For the same reason discussed above as to Mimms's retaliation claim, exhaustion of administrative remedies is excused as to this claim. This is so even though Mimms does not allege that Ittayem was personally involved in the retaliation. Anderson and Marshall allegedly retaliated against Mimms for filing grievances against prison staff in general—not only grievances against Anderson and Marshall themselves. Mimms's allegations as to this retaliation, taken as true, are sufficient to show that a person "of ordinary firmness" would reasonably have felt that administrative grievances were unavailable as to *any* member of the MDC's staff, at least in the immediate aftermath of the alleged January 12-13, 2010 retaliation.

However, Mimms fails to state a constitutional claim against Ittayem. Where a prison official exhibits "deliberate indifference to serious medical needs" of an inmate, the official violates the Eight Amendment's prohibition of cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state such an Eight Amendment claim, the plaintiff must plead allegations meeting both "objective" and "subjective" standards. See Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).

The "objective" standard requires that the alleged deprivation of medical care be "sufficiently serious." Id. "Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)) (internal quotation marks omitted). If the

---

Federal Bureau of Prisons, 552 U.S. 214, 242 (2008). Under 28 U.S.C. § 2401(b), an FTCA action may not proceed unless the plaintiff presents his claim to the appropriate federal agency with two years of the time the claim accrued. Mimms has not administratively exhausted his claim as to Hamilton in this manner, thus depriving the court of subject matter jurisdiction over any FTCA claim.

plaintiff, as in Mimms's case, alleges "a failure to provide any treatment for [his] medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. at 280. "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" Id. (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)); see also Chance, 143 F.3d at 702 (serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain") (internal quotation marks omitted). A plaintiff is not required to demonstrate that he experienced "pain that is at the limit of human ability to bear, nor [that his] condition will degenerate into a life-threatening one." Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003).

The "subjective" standard requires that the defendant prison official have acted with a sufficiently culpable state of mind, namely "deliberate indifference." See Salahuddin, 467 F.3d at 280 (citing Wilson, 501 U.S. at 300). Deliberate indifference "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1970). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." Salahuddin, 467 F.3d at 280 (citing Farmer, 511 U.S. at 839-40). Thus, a plaintiff must allege sufficient facts to show that "the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm [would] result." Id.; see also Farmer, 511 U.S. at 837-38 (criminal law "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware"); Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000) ("Deliberate indifference will exist when an official 'knows that inmates face

a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'") (quoting Farmer, 511 U.S. at 847).

Mimms alleges that Ittayem refused to treat nerve damage in his left arm.[6] In particular, Mimms alleges that, at the time of his treatment request to Ittayem, he suffered from nerve damage in his left arm due to a broken finger in his left hand, accompanied by numbness, weakness, and chronic pain. (Am. Compl. at 8, 9, 11; Docket Entry # 7-3 at 3, 4.)

The court need not determine whether these conditions are sufficiently serious to state an Eighth Amendment claim, since it is clear that Mimms fails sufficiently to allege Ittayem's "deliberate indifference," as required. Mimms alleges that he asked Ittayem, "How long before I'm seen regarding nerve damage to my left arm?" (Am. Compl. at 5.) Ittayem then told Mimms, "Lift your arm, stretch it out." (Id.) "After that," Mimms states, "Dr. Ittayem smirked and said 'Nerve damage, huh' and dismissed me with a wave of his hand." (Id.) The clear implication is that Mimms did in fact lift and stretch his left arm and that this convinced Dr. Ittayem that Mimms's alleged "nerve damage" was not serious. In other words, Mimms's own allegations show that Ittayem, while perhaps negligent, did not disregard a substantial risk, of which he was aware, that failing to provide Mimms treatment would cause serious harm.

Because Mimms pleads insufficient facts to meet the "subjective" standard applicable to Eight Amendment deliberate indifference claims, his claim as to Ittayem is dismissed.

### 6. Supervisory Liability

Finally, Mimms alleges that Carr, Hess, Pennick, Page, and Small failed to properly supervise or train Anderson and Marshall. (Am. Compl. at 4, 8, 12.) Because the only claim that survives Defendants' motion to dismiss is Mimms's claim that Anderson and Marshall retaliated

---

[6] In his Amended Complaint, Mimms refers to several other medical problems as well, but these do not appear to be relevant to his claim against Ittayem.

against him in violation of the First Amendment, the court considers Mimms's supervisory

liability claim only in connection with that alleged constitutional violation.[7]

There is no vicarious liability in <u>Bivens</u> suits. See <u>Iqbal</u>, 129 S. Ct. at 1948.

Accordingly, the "plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution." <u>Id.</u> A plaintiff can prove such

personal liability in the following ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2)
> the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference . . . by failing to act on information indicating that
> unconstitutional acts were occurring.

<u>Back v. Hastings On Hudson Union Free School Dist.</u>, 365 F.3d 107, 127 (2d Cir. 2004) (internal

quotation marks omitted). Where a plaintiff alleges the violation of a constitutional right

resulting from a supervisory official's failure to train subordinates, he must prove (1) that the

official was deliberately indifferent to the need to train subordinates as to their obligation not to

violate the constitutional right at issue, and (2) that the lack of training actually caused the

alleged constitutional violation. See <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1358 (2011).

Mimms does not allege any specific facts to support any of the above-listed theories of

supervisory liability. Instead, his claim that Carr, Hess, Pennick, Page, and Small failed to

supervise or train Anderson and Marshall is wholly conclusory, and thus insufficient to support a

finding of liability. See <u>Pettus v. Morgenthau</u>, 554 F.3d 293, 300 (2d Cir. 2009) (affirming

---

[7] Mimms also alleges that Carr is liable for "malicious prosecution." (Am. Compl. at 4.) The court
assumes that Mimms here refers to his January 13, 2010 disciplinary proceeding and subsequent
placement in the SHU. Mimms does not allege that Carr was personally involved in this incident.
Therefore, the court reads Mimms's Amended Complaint to allege that Carr is liable to the extent that he
failed to supervise or train those who *were* personally involved, i.e., Anderson and Marshall.

dismissal of failure-to-supervise claim against supervisory official since complaint lacked "any hint that [the official] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights."). Accordingly, Mimms's supervisory liability claims are dismissed.

## III. CONCLUSION

Defendants' motion to dismiss as to Mimms's claim that Anderson and Marshall violated the First Amendment by retaliating against Mimms for filing prison grievances is DENIED. As to all of Mimms's other claims, Defendants' motion to dismiss is GRANTED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
    June  7  , 2011

NICHOLAS G. GARAUFIS
United States District Judge